PENNSYLVANIA *v.* ABRAHAM KIRKPATRICK and
SAMUEL MENOUGH

AN inquifition of a forcible entry and detainer, taken
before two juftices of the peace in *Allegheny* county,
being removed by *certiorari* into the county court,* in-
ftead of traverfing the inquifition, and trying it by a jury,

1794.

* As this cafe was greatly litigated, before it came into
court, it may not be amifs to give a narrative of its pro-
grefs.

The defendants applied to one of the judges of the court
of Common Pleas of *Allegheny* county, for his allowance of
a *certiorari*, to remove the proceedings into the county
court, and obtained it. The counfel for the profecution
objeɛted to the *certiorari* as irregular, and applied to the
judge to fuperfede it. Some doubts fubfifting, the judge
fent to me the following cafe, for my opinion, 30th *Janu-
ary*, 1794.——" Inquifition of a forcible entry and detainer
found before juftices of the peace. *Certiorari*, at the prayer
of the defendant, allowed by a fingle judge in vacation, as
of courfe, without fpecial caufe fhewn.

" *Quere* 1. Has a judge, in vacation, authority to allow
a *certiorari*, to juftices of the peace, in the above cafe ? If
fo, is it iffuable of courfe, or muft fpecial caufe be fhewn.

" H. H. BRACKENRIDGE, *for prof.*
" STEEL SEMPLE, *for def.*"

This cafe was accompanied with the following notes by
Mr. *Brackenridge.*

" A *certiorari* is a writ out of the King's Bench, which
appears to have been grantable only on motion, in open 1 *Salk.* 144.
court. Every cafe refpeɛts moving for a *certiorari* or *pro-
cedendo* to fuperfede it. No idea of a *certiorari* having iffued
from a judge in vacation. This would feem not to have
been known to the law, any more than a *mandamus*, or at-
tachment, or other fuperintending and relieving writ. The 2 *Hawk.*409.
power of a judge in vacation, to iffue this writ, appears firft
in the aɛt of 5th and 6th *William* and *Mary*, fince the char-
ter of *Penn*, and, therefore, not a ftatute of our law. *Queen* 1 *Salk.* 150.
*v. White*, is a cafe fince that ftatute. Our ftatute of 13th
*April*, 1791, empowering the Supreme court, or a judge of 3 *St L.*94.
that court, to allow writs of *certiorari*, argues the authority
to have been otherwife at common law. *King v. Eaton*, is 2 *T. Rep.* 89.

O

the counfel on both fides, prefented the following written agreement to the court, 8th *March*, 1794.

decifive, that a *certiorari* ought not to have been granted in vacation, but in open court, and on a ground fhewn. But, by our ftatute, a judge of the Supreme court in vacation, on fpecial ground fhewn, can iffue a *certiorari* to the feffions of the peace, &c. and by our conftitution, the judges of the courts of Common Pleas, have the like powers with the judges of the Supreme court, to iffue writs of *certiorari* to the juftices of the peace. The court of Quarter Seffions is now one thing, and the juftices of the peace another. Therefore the power of the Supreme court, with refpect to the juftices, remains as it was at common law. Of courfe, the power of the court of Common Pleas, with refpect to them, remains the fame : and a *certiori* to the juftices, in their fummary jurifdiction, is grantable only by our Supreme court, or court of Common Pleas, on motion, in open court, and not by a judge, in vacation. But, if allowable by a judge in vacation, at all, it muft be done on caufe fhewn. I fpeak of the cafe of a *certiorari* prayed for by the defendant, or, on a liberal conftruction of the principle, by a private profecutor ufing the name of the Commonwealth.

"From the whole of the authorities, and the fcope of the reafoning in the books, in cafes of *certiorari*, it is evident, that a writ of this nature is not grantable of courfe.

" In the fummary jurifdiction of the juftices, it would totally defeat the object of the law, as to fummary redrefs, if the inquifition were removeable of courfe. In all criminal cafes, it clearly cannot ; and I fhould conceive, that, in all fummary cafes of a civil nature, the *certiorari* will be grantable, only to give a revifion of the proceedings, and to fet afide for want of jurifdiction, or for irregularity.

" It had been an early practice in this country, and, I believe, in the middle counties of *Pennfylvania*, to confider the *certiorari* in a criminal, as well as in a civil cafe, as iffued of courfe. But in the year 1785 or 1786, I think, at *Chamberfburgh*, a decifion was formally given, by the judges of the Supreme court, that the *certiorari* was not a writ of courfe, but obtainable, at the prayer of the defendant, only on motion. The reafon is, that otherwife it would be in moft cafes, ufed for the purpofe of delay."

Such were the notes of Mr. *Brackenridge*. I would obferve, that the expreffions of juftice *Buller*, in one of the cafes cited, may render it queftionable, whether a fingle judge of the court of King's Bench in *England*, had autho-

"Agreed, that a verdict for the Commonwealth be en-
tered, on this inqueft, fubject to the opinion of the court
on the following cafe. ·

1794.

rity to iffue writs of *certiorari*, before the act 5 and 6, *W*,
and *M*, which gave this authority. .

5, 6, *W*. &
*M*, § 5.

The act for eftablifhing courts of judicature in this pro-
vince, gave the judges of the Supreme court all the autho-
rity of judges of the King's Bench, Common Pleas, and
Exchequer, in *England;* it therefore gave them all the
authority, which the ftat. 5, 6. *W*. and *M*. had before giv-
en to the judges of the King's Bench; and befides, it ex-
prefsly gave authority, to iffue writs, of *certiorari*, &c.

1 *St. L.* 171,
§ 13.

§ 11.

The judges of the Supreme court, then, probably iffued
writs of *certiorari* to juftices of the peace, acting fpecially,
in the fame manner, as to inferior courts; and the feventh
fection of the act to eftablifh the judicial courts of this
Commonwealth, is but a recognition of what their practice
was before that act.

3 *St.* L. 94.

Until the prefent conftitution, the county courts were
compofed of juftices of the peace, and had no power to
fend a *certiorari* to any juftice acting individually. This
power was in the judges of the Supreme court only.

When the Convention of 1789 was new modelling, the
county courts, and eftablifhing them on a more refpectable
footing, it was propofed to give them jurifdiction in capi-
tal cafes. But that a prifoner, to be tried for his life, might
have the benefit of the moft enlightened tribunal in the
ftate, it was propofed, " that the parties accufed, as well
as the Commonwealth, may remove the indictment and
proceedings into the Supreme court *at any time before trial*."
An amendment of this propofition was introduced, fubfti-
tuting, inftead of the words " *at any time before trial*," the
following provifion ; " *but no writ of removal, prefented by
the party accufed, fhall be allowed by the court, where the in-
dictment fhall have been found without the confent of the at-
torney general, or fpecial caufe fhewn, unlefs the fame fhall
have been fpecially awarded by the Supreme court, or one of the
juftices thereof.*" This amendment was almoft unanimoufly
rejected by the convention ; becaufe it altogether fuper-
feded the provifion of removal into the Supreme court, by
the party accufed, and left the jurifdiction in the county
courts, the fame, as if no fuch provifion had been made ;
for, if nothing had been faid of removal, the law and prac-
tice, as it ftood before, would have fecured a removal on

*Journals of
Convention*,
17th February
1790.
*p.* 104-5.

1794.    *Alexander Fowler*, the profecutor, being feized of the
premifes mentioned in the inquifition, and in actual
poffeffion of the fame, judgments were entered againſt

the terms propofed by this amendment; and becaufe it
was the intention of the convention, while they gave to the
county courts jurifdiction in capital cafes, to annex, to
this jurifdiction, a condition of enlarging the power of re-
moval, by defendants, into the Supreme court.   The mat-
ter ftood thus in the convention; it was thought proper,
to give the jurifdiction, but not without extending, as far
as poffible, the power of removal, by the perfons accufed;
when it was propofed, that the provifion for removal fhould
be, " that the parties accufed, as well as the Common-
wealth, may, *under fuch regulations, as fhall be prefcribed by
law,* remove the indictment and proceedings into the Su-
preme court."   This propofition was adopted.   But when,
in conformity to this provifion of the conftitution, the
legiflature proceeded to prefcribe regulations for the re-
moval, by parties accufed, of indictments and proceedings
into the Supreme court; they prefcribed this regulation,
3 *St. L.* 94. that " *the certiorari fhall be fpecially allowed by the Supreme
court, or one of the juftices thereof, upon fufficient caufe to it or
him fhewn, or fhall have been fued out with the confent of the
attorney general.*"   This regulation, like the amendment
firft propofed, and almoft unanimoufly rejected in the con-
vention, added no new privilege to the parties accufed,
eftablifhed the regulation, which the convention had re-
jected, entirely defeated the provifion for the removal, and
left the jurifdiction in the county courts, as if no provifion
for removal had been made, and it refted only on the law
and practice in the courts of *England,* and in the Supreme
court, which had the fame authority and rules.

The conftitution gives to the judges of the courts of
Common Pleas, within their refpective counties, like pow-
ers with the judges of the Supreme court, to iffue writs of
*certiorari* to the juftices of the peace, and to caufe their
proceedings to be brought before them, and the like right
and juftice to be done.   Therefore judges of the county
courts of Common Pleas here may, within their counties,
iffue writs of *certiorari,* as judges of the King's Bench in
*England* could do.

4*Burr.* 2457.    Now in *England,* the king has a right to demand a *certio-*
2 *T. Rep.* 89, *rari,* and it cannot be refufed him.   A private profecutor,
90.    borrowing, as he muft, the name of the king, for a profe-
2*Hawk.* 407. cution, in which the king takes no intereft, has a *certiorari*

him, upon which executions iffued, the premifes were     1794.
feized, condemned, and fold by the prefent fheriff, and
a deed was executed by him to *Abraham Kirkpatrick,*

of courfe, unlefs caufe be fhewn againft it. But a defendant
cannot have a *certiorari,* unlefs he firft fhew caufe for it.

Any *certiorari,* iffuing for a defendant, without fpecial
caufe fhewn, is irregular, and will be fet afide.

My opinion on the above cafe was tranfmitted to the
judge as follows.

The authority of the judges of the courts of Common
Pleas, to iffue writs of *certiorari* to juftices of the peace,
is derived from the 8th fection of the 5th article of the
conftitution, which gives them the like powers with
the judges of the Supreme court. The judges of the Su-
preme court had the like powers with the judges of the
court of King's Bench ; which court had a general fuper-
intendance over all inferior jurifdictions. Therefore, if we
can difcover what were the regulations, under which writs
of *certiorari* were iffued by the judges of the King's Bench,
we fhall, of courfe, know the regulations for iffuing them
by the judges of the Supreme court, and the judges of the
courts of Common Pleas ; for they will be the fame.

Comparing the expreffions of juftice *Buller,* with the   2 *T. Rep.* 90.
provifion of the act of Parliament 5, 6, *W.* and *M.* it does *c.* 11 §. 5.
appear probable, that, before that act, writs of *certiorari,* 2 *Hawk.* 409.
for the defendant, were not granted but by the court in
term time.

Yet there is an inconvenience in this : and the claufe in 3 *St. L.* 94.
the 7th fection of the judiciary law, which relates to writs
of *certiorari* being allowed by one judge of the Supreme
court, is not fo much the introduction of new law, as a re-
cognition of former law or eftablifhed practice ; and feems
to be the fame as that given by the act of parliament to the
judges of the court of King's Bench, and by the act of af-
fembly vefted, with the other powers of the judges of the 1 *St. L.* 171,
court of King's Bench, in the judges of the Supreme court ; 180, 179.
and the 11th fection of this act of affembly exprefsly gives
any one judge of the Supreme court power to iffue writs of
*certiorari.* So that the 7th fection of the act of 1791, gave
no new powers to the judges of the Supreme court ; and
their powers being the fame with thofe of the judges of the
court of King's Bench in *England,* it is probable, that their
practice was alfo the fame. And it is probable, that, ref-
pecting writs of *certiorari* directed to juftices acting fpeci-

1794.

the purchafer and one of the defendants, (prout judg-ment, execution, and deed). The fheriff, after the ac-knowledgment of the deed, went to the premifes with *Abraham Kirkpatrick, Samuel Menough,* and others, broke open the door of the mill, in which there was no perfon, and gave poffeffion of the mill to *Abraham Kirkpatrick,* who left *Samuel Menough* in poffeffion for him, as his tenant. *Alexander Fowler* entered, and forcibly turned *Samuel Menough* out of the mill, and held the poffeffion.

ally, they adopted the fame rules, as refpecting thofe writs directed to juftices as a court of Quarter Seffions. At leaft I know not the contrary.

But it feems to be fettled, that a *certiorari* on the part of the defendant, and without the direction or confent of the attorney-general, is never granted, but on caufe fhewn, and eftablifhed by *affidavit.* And, if granted otherwife, it feems to be always fet afide. And, in the cafe of a forcible en-try and detainer, I think the caufe fhewn ought to be good, and clearly made out ; as the *certiorari* prayed for is to de-lay the execution of a ftatute, intended as a fummary and fpecific relief againft an act of violence ; and, if the cafe require it, all equitable terms ought to be laid on the de-fendant.

The above opinion, tranfmitted by me to the judge, be-ing againft the *certiorari,* as iffued, the counfel for the de-fendant, as Mr. *Brackenridge* ftated to me, attempted to fupport it by procuring the confent of the attorney for the ftate. " This," fays Mr. *Brackenridge,* " I conceive could not help it.

" 1. Becaufe the confent was not given before the iffu-ing, and fo the writ did not iffue by confent, but without confent.

4 *Burr.* 2458,    " 2. Becaufe, it being the cafe of a private profecutor,
*Rex v. Pufey,* the attorney had no right to interfere.
2 *Str.* 717, and    " The law is clear, that the attorney cannot *demand* a
*by analogy, fee*
*Rex v. Hales* certiorari for the profecutor ; and why, without his confent,
2 *Str.* 816 and allow one to the defendant. It ftrikes me as unreafonable,
*Rex v. Elford* that, as the prerogative or power of the attorney, to affift
2 *Str.* 877. a private profecutor, is taken away, it fhould exift, to injure
him. However, the bufinefs was fet right, at laft, by ob-taining a new writ, on affidavit filed, and conditions im-pofed."

*Rex v. Fare-*    But it feems to have been determined that a profecutor
*well,*
2 *Str.* 1209. is not bound to make affidavit or enter into recognifance.
6 *T. Rep.* 197.

1794.

The sheriff, after this, returned to the premises, together with *Abraham Kirkpatrick, Samuel Menough,* and others, who attended the sheriff, by his order ; and, with force and arms, broke the dwelling house of *Alexander Fowler* on the premises, entered, and forcibly put him out, and gave possession of the house to *Abraham Kirkpatrick.* Whilst the sheriff was breaking the house, *Abraham Kirkpatrick* and others, who came with the sheriff, went into the mill, the door of which was open, took possession, and held it with force, and still does hold, against the said *Alexander,* the house, and mill, and premises, then sold and delivered to him.   If the court is of opinion, &c. then, &c.  This case not to bar any exceptions to the form and regularity or effect of the proceedings previous to the settlement of this case.

> " H. H. BRACKENRIDGE, for prof.
> " JAMES ROSS, for def."

This case was argued by *Brackenridge* and *Young,* for the prosecutor, and by *Ross,* for the defendants.

*Brackenridge.*   The question is, whether, on an execution, and sale of land, under the act of assembly, the sheriff can give possession to the purchaser.

*1 St. L. 67.*

Estates could not be aliened, at discretion by the owner, because his heirs and the public had an interest ; and therefore lands were not made subject to debts, but after long time, and under great restrictions.   Estates less than freehold were less favoured, and less in proportion as they approached the nature of chattels.   Estates for years, or chattels real, may be taken in execution. To encumber land, certain solemnities were prescribed. On the sale of a term on a *fieri facias,* possession cannot be given ; nor, to execute a *fieri facias,* can doors be broken ; therefore no possession can be given.   If the sheriff sell a lease, he cannot turn the tenant out of possession, but the vendee must bring an ejectment.   At the suit of the king, or on a *habere facias possessionem,* the sheriff may break open doors.  A person having a right of entry may enter *peaceably,* and, being in possession, may retain it, and plead his right.  *Buller,* justice, inclines to think, the sheriff may turn out the person against whom the judgment is.  But he speaks cautiously, which implies, there never had been an instance of it, and he

*2 Comm. 287,* *290, 140.* *3 Comm. 417.* *Stat. 11 & 13* *Edw. 1.* *27, Edw. 1.*

*3 Comm. 417.* *2 Bac. 351,* *367.* *2 Shower 85.*

*3 T. Rep. 298.*

O 4

1794.

*St. L.* 68.

rather feems to exprefs what the law ought to be, than what it is. This is a mere fpeculative opinion, and in the cafe of a leafe, *Kenyon,* chief juftice, fays, under an *elegit,* the fheriff could not deliver the land. The ftatute giving the *elegit,* fays the fheriff fhall deliver. The act of affembly, for taking lands in execution, directs, that where it extends, the fheriff fhall deliver as upon writs of *elegit.* The act furely does not mean more, where, as on a *fieri facias,* all property is devefted. There is good reafon, that poffeffion fhould not be given under fuch a writ, without farther enquiry. The fheriff levies an indefinite tract of land, without metes, &c. It is proper, that there fhould be an ejectment, to examine all the circumftances, and afcertain the fpecific quantity fold, and then a writ will iffue, ordering the fheriff to give poffeffion, as the former execution ordered him to fell.

But, be the reafon of the law what it may, the law has been, that no poffeffion can be given on a *fieri facias.* No inftance has ever been of fuch poffeffion given. Hence a ftrong prefumption, that none can be given.

*Rofs,* for the defendants. It is true, by the common law, grounded on feudal principles, a judgment could not affect lands. They were a benefice for military fervice, the common tie between lord and tenant; and no alienation could be permitted, left an enemy fhould be made tenant. Even a fon muft be admitted by the lord, before he could enjoy the poffeffion of his father. As military tenures were flackened, and commerce increafed, the neceffity of fubjecting lands to debts became evident.

*Cowp.* 1.

*Bac.* 358.

The privilege of a houfe has been unreafonably extended, and is to be taken ftrictly. Does the fame privilege extend to houfes and lands, when they themfelves become fubjects of execution? Chattels only were liable to debts; becaufe the debt was but a chattel.— Land was not liable, becaufe it was the means of procuring military fervice, and defence of the kingdom. Afterwards commerce fubjected lands to debts. The difference is as great between our fituation and fyftem of property, and that of *England,* at the time of the decifions cited againft me, as between the fituation of *England* then, and its fituation before land could be fold at

all. When the law gives the end, it muft give all the means neceffary to accomplifh it. When land is fubjected to execution, it muft be feized by the fheriff, in the fame manner as chattels may be feized; for otherwife the power of feizing would be nugatory. Our act of affembly made lands liable to execution. This makes them chattels for the payment of debts; and they have always been fo confidered.

On *elegit*, the fheriff is to deliver to the creditor, but half of the land. The fheriff cannot turn the debtor out of his own fhare: it is an undivided moiety. The fheriff holds an inquifition; afterwards, a *liberate* iffues. Our execution enables the fheriff to feize land. And, from this time, he continues conftructively in poffeffion. His entry and poffeffion are lawful, and even by the command of the law.

The defcription of the land indorfed on the *fieri facias*, and inferted in the advertifement of fale, and in the deed, is more fpecific, than the defcription in ejectment. And the tenant may, at any time during the proceeding to fale, or before the execution and acknowledgment of the deed to the purchafer, come in and make his objections.

As in the cafe of a recovery or fine, all the parts make but one whole title, and have a mutual relation: fo the *fieri facias*, the feifure, and the *venditioni exponas*, the fale, and the deed, make but one: and the fheriff is fuppofed to be always in poffeffion. The act of affembly enables the fheriff to give a deed vefting in the purchafer all the debtor's title, at the time of the judgment. I contend, the fheriff, under the *fieri facias*, may turn out any tenant of the debtor, whofe title accrues fubfequent to the judgment.

It is not material here, whether the fheriff can break open the door, to take chattels out of the houfe. For here he may take the houfe itfelf. This is a cafe different from the other of which the *Englifh* books fpeak.— Why enable a fheriff to take a *horfe* by force, and not a *houfe*?

Though the fheriff be not ftrictly juftifiable in breaking doors, to make execution, yet, if he do it, the execution is good; and the party is turned round to his remedy againft the fheriff.

The cafe in *Shower* is quoted in *Taylor v. Cole* ; and yet juſtice *Buller*, is of opinion, that the ſheriff may give poſſeſſion.

*Young*, for the profecutor. In conſtruing ſtatutes, we muſt conſider, 1, what the common law was before ;— 2, what was the miſchief intended to be remedied ; 3, what the remedy is ; and 4, what is the reaſon of that remedy.

Our act of aſſembly makes lands liable to ſale, and gives a clear eſtate in them to the purchaſer ; but no authority to give poſſeſſion ; no *liberate*, which in *England* is neceſſary to give goods to the creditor. Many eſtates have been ſold, without the knowledge of the debtor. The acts of aſſembly give the ſheriff no poſ-ſeſſion ; only authority to ſell, with a power to enter on the land, to aſcertain it. Having ſold, the ſheriff is *functus officio*. Statutes are to be conſtrued according to the reaſons of the common law. Judges are not legiſlators. Land is to be delivered as on writs of *elegit* in *England*. No property can be delivered without a *liberate*. The acts give no authority to the ſheriff to give poſſeſſion, therefore he cannot do it, however right it might be.— Courts cannot exceed their authority ; much leſs can miniſterial officers. No fees are mentioned for this ſer-vice, in the table of fees. The laws, rendering lands ſubject to execution for debts, make not lands chattels, but aſſets. In *elegit*, it is not an undivided moiety, that is delivered ; but a moiety by metes and bounds. I have known ejectments brought on a *liberari facias*.

The whole proceeding, the levy, the ſale, and the deed, is but a conveyance, and operates as nothing more. It transfers the right, as if the owner himſelf had made the conveyance. The law gives the ſheriff autho-rity to ſeiſe, levy, and ſell. He has no poſſeſſion, and therefore can give none ; for he can give no more than he had. He had no right to take poſſeſſion ; for, if he had, he might, at the ſeiſure, have turned *A. Fowler* out of doors, and occupied and enjoyed the premiſes : for that only makes poſſeſſion. Entry makes ſeiſin, and enables to convey ; but makes not poſſeſſion. The ſheriff, therefore, conveys the right, but does not ſur-render the poſſeſſion. That, if detained, muſt be ob-tained, with damages for the detention, by a direct ſuit, when poſſeſſion will be the object.

At *June* term, 1794, the opinion of the court was delivered.

PRESIDENT. An inquisition of forcible entry and detainer, taken before two justices of the peace, having been removed, by *certiorari*, into this court, at the last term, the counsel for the parties presented the following case for our opinion.

" Agreed, that a verdict," &c. *ante* p. 195.

The question in fact is, whether a sheriff, on a sale of lands taken in execution on a judgment, under the act of assembly is authorised to turn out the defendant possessor by force, and put the purchaser in possession.

There are some circumstances in the present case, different from the mere abstract question. But, in the argument, no stress was laid on them, and, perhaps, it may not be necessary to rely on them in making up our opinion. The abstract question only was considered then : perhaps the abstract question only need be considered now.

The argument for the prosecutor relied strongly on the unalienable quality of lands at common law, and the great hesitation, with which statutes submitted them to debts ; and stating, that all statutes, in derogation of the principles of the common law, are liable to a strict construction, concluded, that our acts of assembly, which gave authority to sheriffs to sell lands, enabled them only to convey the right, not to change the possession ; and that, to suppose the contrary, would authorise the sheriff, immediately on receiving the *fieri facias*, to turn the debtor out of possession, and to occupy the land himself, and receive the profits, till the time of the sale. But, as the act of assembly does not authorise the sheriff to do this, before the sale, he cannot do it after, for then his authority ceases ; and the purchaser, like every other owner out of possession, must acquire it in a peaceable manner, or compel it by a direct suit, when that and damages will be obtained by an execution for that purpose. It is settled, that a sheriff cannot break open an outer door, to execute a *fieri facias* : how then can he give possession of a house ? Though a term, being a chattel, may be sold on a *fieri facias* ; or a moiety of land delivered on an *elegit*, yet, in neither case, can the sheriff give possession. The purchaser and the creditor must ob-

tain poffeffion, by ejectment. There is great reafon, why a defendant fhould not be concluded by the proceedings in an execution, of which he may not have had notice, nor be turned out of doors without an opportunity of defence. Even if this were a regulation proper to be eftablifhed, courts cannot take on them the authority of legiflation; and they have no precedent or authority, to warrant them in giving fanction to this proceeding. There is no inftance of this having ever happened either in *England* or *Pennfylvania*. The opinion of juftice *Buller*, in the cafe of *Taylor v. Cole*, is on a point not judicially before him, is in the cafe of a leafe not of a fee fimple, is expreffed cautioufly, as on a new fubject, and indicates rather what the law ought to be, than what it is. And, in the fame cafe, lord *Kenyon*, chief juftice, fays, that on an *elegit*, the fheriff could not deliver the land.

Againft thefe arguments for the profecutor, the counfel for the defendants contended, that the unalienable quality of lands, at common law, proceeded from the peculiar nature of feudal tenures, being confidered as a benefice for military fervice. But thefe principles have gradually given way to the progrefs of commerce: and our acts of affembly, fubjecting lands to execution and fale for debt, completely reduces them to the ftate of chattels; and, if they may be feized as chattels, it follows, that they may be feized by force. The whole proceeding, the *fieri facias*, the feizure, the inquifition, the *venditioni exponas*, the fale, and the deed, are, as in the cafe of a fine or recovery, to be confidered as one tranfaction; and the fheriff to be confidered as in poffeffion from the feizure. The proceedings give fufficient notice, and opportunity of defence, to all parties concerned. It is not material, whether, in *England*, the fheriff can break open the door of a houfe, to feize chattels; for, here, he may feize the houfe itfelf. And, there, the irregularity of breaking the door does not avoid the execution, it only fubjects the fheriff to an action of trefpafs. The cafe in *Shower*, which lays it down, that, on the fale of a term, the fheriff cannot turn out the tenant, but the vendee muft bring an ejectment, was cited in the cafe of *Taylor v. Cole*, and yet there juftice *Buller* gives it as his opinion, that the fheriff might turn out the tenant.

Such feems to me the material fubftance of the argu- 1794.
ments in this cafe. They were ample and well directed.
No decifion has been difcovered, to juftify the power
exercifed by the fheriff, on this occafion. What then
fhall we fay ? Has an attempt been made, in this cafe,
which was never made before ? Or has it often been
made, and found fo palpably juftifiable as never to have
been called in queftion ? This cannot be, for there is a 2 *Show.* 85.
decifion againft it. I am inclined to believe, therefore,
that the attempt has been feldom made ; and is now de-
fended, not by any precedent, but on the authority of
juftice *Buller*; on the terms or intent of our acts of af- 1*St.L,* 12,67.
fembly, for taking lands in execution for payment of
debts ; and on the principles of general convenience.

I. If accuracy of judgment, and knowledge of the
fubject, can give weight to an opinion, there are few, if
any, whofe opinions are entitled to more refpect, than
thofe of juftice *Buller*. The cafe, in which his opinion
was given, differs effentially from the cafe before us.—
I fpeak of the cafe of *Taylor v. Cole*, as it appears in 3*T. Rep.*292.
*Term Reports*, and in *H. Blackstone's Reports*. That *H. Bla.* 555.
was an action of trefpafs againft a fheriff. In that cafe,
the entry of the fheriff was lawful and peaceable, and
there was no expulfion by the fheriff. His entry was
lawful, by virtue of a *fieri facias*, to be executed on the
houfe ; and the jury acquitted him of both the force and
the expulfion. This is an entry and expulfion made
with force. That cafe was a civil action. This cafe
is a criminal proceeding. Though the cafe of *Taylor*
and *Cole*, arofe on a fheriff's fale ; yet there is nothing in
the manner in which the court examine it, to juftify an
idea, that a forcible expulfion, by virtue of a fheriff's
fale, is not within the ftatutes of forcible entry and de-
tainer ; but rather that it is within thofe ftatutes. The
chief juftice, without diftinguifhing in favour of fhe-
riff's fales, ftates generally, that the cafe then before the
court, was an action of trefpafs, in which a perfon having a
right and having peaceably exerted it, may plead, that the
land on which he entered was his own; but if he affert that
right by force, it becomes the fubject of a criminal pro-
fecution, which was the cafe in *Shower*, a proceeding
under the ftatute for a forcible entry. If this cafe in *Rex v. Deane,*
*Shower*, which lays it down, that the fheriff, having fold *et al.* 2 *Show.*
85.

a term, on a *fieri facias*, cannot, and muſt not, put the perſon out of poſſeſſion, and the vendee in ; but the vendee muſt bring his ejectment, had not been conſidered, by the chief juſtice, as applicable to a tenant in poſſeſſion defendant, and as good law ; why ſhould he have given himſelf the trouble of diſtinguiſhing that caſe from the caſe before him, in theſe points, that the entry in the one caſe was peaceable, in the other forcible, and that the one was a civil action, the other a criminal proſecution. *Buller*, after expreſſing the inclination of his thought, on a mere ſpeculative point, not within the caſe before him, declares, that he gives no opinion.—*Kenyon*, at the ſame time, ſeems to recognize the caſe in *Shower*, and that caſe is contrary to the inclination of *Buller's* thoughts. The caſe in *Shower* ſeems to be recognized by the general current of *Engliſh* law authorities ; and, ſuppoſing a term and a fee, in this reſpect, ſimilar, is the caſe before us. Whether, therefore, are we to take for law the ſolitary, extra-judicial, unpremeditated, and unrelied on, opinion of a ſingle, though highly reſpectable, judge ; or a decided caſe, countenanced by the general weight of authority, and introduced into all the ſubſequent ſyſtems, as an eſtabliſhed point of law ? No doubt, the defendants, coming with the ſheriff at his requeſt, are exactly in his ſituation, and, if he be juſtifiable, they are. If a ſheriff has authority to give poſſeſſion, he muſt have authority to do it by force. The caſe in *Shower* ſays, he has no ſuch authority.

If the ſuggeſtion of juſtice *Buller* can be reconciled with the caſe in *Shower*, it will be a more reſpectful attempt to reconcile them, than to ſet them in oppoſition. Both the caſe in *Shower*, and the caſe before us, are of a ſheriff's giving poſſeſſion after a ſale. Juſtice *Buller* ſays, that the ſheriff, having ſold is *functus officio :* can this mean any thing, but that his authority over the premiſes is expired ? I ſhould pay but a poor compliment to the judgment of juſtice *Buller*, to conſider him as ſaying, that a ſheriff has authority to act, after he has ſaid, that his authority is expired. He does not ſay, that a ſheriff *functus officio* can turn out a tenant by force, nor that a *purchaſer* at ſheriff's ſale can turn out a tenant by force (I ſuppoſe always the tenant to be the de-

fendant in the judgment); and unlefs he fays one or other of thefe, he comes not up to the cafe before us. He certainly would appear more confiftent with himfelf, if we confider the authority he attributes to the fheriff, of turning out the tenant, as exerted, at the time of the feizure under the *fieri facias*, than as exerted after the fale. Let us fee whether there be not fomething in the method of proceeding in *England* to the fale of a term, that will render this conftruction of juftice *Buller's* opinion more probable, than it would be, if it were to be applied to the method of proceeding to the fale of a fee fimple eftate under our act of affembly. In *England*, a term is fold, becaufe it is a chattel. Immediately after receiving the *fieri facias*, the fheriff may feize the term, and, without delay, proceed to fell it, as he would proceed to fell goods. The diftance of time, between the feifure and fale, may be fo inconfiderable, that it is almoft the fame thing to the tenant, whether he is turned out at the feifure, or at the fale. In *Pennfylvania*, the fheriff, having received a *fieri facias*, and feifed lands, muft fummon an inqueft, and return the whole proceedings to the next court; and cannot proceed to fell, till, after this return, he has received a *venditioni exponas*; and, inftead of feveral days, feveral months, muft intervene between the feifure and the fale. It might be probable, therefore, that juftice *Buller* would fay, turn out the tenant, at the feifure; when, if between that and the fale, fuch time intervened, as in *Pennfylvania* intervenes, he would not have faid fo: when perhaps the feifure might be juft before harveft, and the crop to be then fevered might go far to pay the debt.

In *England*, nothing but chattels can be feifed on a *fieri facias*. It has been held, that a bargain of fale of chattels is incomplete, without delivery. Any affignment of chattels, unlefs poffeffion accompany it, is, as againft third perfons interefted, held fraudulent and void; becaufe poffeffion remaining in the affignor, gives him a falfe credit, and enables him to impofe upon others.— This is not the cafe with refpect to land; for poffeffion of it is not confidered as evidence of right or title in it: this depends on the deeds, by which it is transferred from one to another. But as leafes of land are confidered as chattels, they have, in this refpect, been fubjected to the

1794.

regulations of other chattels; and a conveyance of a leafe for years, unattended with poffeffion, has been held fraudulent. Confidering a feifure in execution, as but a form of affignment, the fame principles, for the prevention of fraud, have been applied to chattels taken in execution, and left in the poffeffion of the owner : for thefe have been confidered as fubject to a fecond execution, at the fuit of another perfon. It appears, therefore, that it muft be ufual in *England,* for fheriffs to take poffeffion of the chattels, which they feife in execution, or to leave fome perfon in poffeffion of them, in their name.

To me thefe circumftances appear to add confiderable weight to the conftruction, which I have fuggefted, of the inclination of juftice *Buller's* thoughts on the power of a fheriff, to turn out the tenant of a leafe. But neither thefe circumftances, nor this conftruction will juftify the defendants in the prefent cafe. If the meaning of juftice *Buller* was, that the fheriff, who could turn out a tenant, muft be one not *functus officio,* the fheriff muft turn out the tenant at the time of the feifure, or before the fale. If the turning out of the tenant be neceffary, to prevent his poffeffion from being evidence of fraud, in the cafe of a leafe ; that is not neceffary in the cafe of a fee-fimple. And, although this manner of turning out a tenant of a leafe, which could be fold with all the fummary diligence of a chattel, might be little or no inconvenience ; yet this manner of turning out a tenant in fee-fimple, the fale of whofe intereft muft proceed with all the flow folemnity of our act of affembly, might be a great inconvenience.

2. If, therefore, the weight of juftice *Buller's* opinion will not juftify the prefent defendants, they muft refort to the fecond point ; the terms and intent of our acts of affembly, for feizing in execution, and felling real eftates.

The firft act provides, to the end that no creditors be defrauded of the juft debts, due to them by perfons who have fufficient real eftates, if not perfonal, to fatisfy the fame; that all lands and houfes fhall be liable to fale on judgment and execution, under certain regulations ; and the fheriff fhall fell and convey the fame, under his hand and feal. After which, fuch lands and houfes fhall be and remain a free and clear eftate to the purchafer,

*Bulstr.* 213.
2 *T. Rep.* 591—5,
1 *Wils.* 44.
1 *L. Ray* 251.

1 *Wils.* 44.
*Reed v. Harrison,* 2 *Bla.* 1218.

1 *St. L.* 12.

his heirs and affigns, as fully as they were to the debtor. The fecond act, with the fame end in view, provides, that lands fhall be liable to be *feized* and fold, upon judgment and execution obtained. The fheriff is directed to give the buyer a deed duly acknowledged in court. If the profits of the lands will, in feven years, pay the debt, the lands fhall be *delivered* to the creditor, until the debt be levied by a reafonable extent, in the fame manner, as lands are delivered on writs of *elegit* in *England.* If the profits be not fufficient, in feven years, to pay the debt, a *venditioni exponas* iffues, empowering the fheriff to fell. And all other lands are to be *feized and taken* by a writ of *levari facias,* and fold, either with or without a *venditioni exponas* : or, if no buyer appear, are to be *delivered,* on a *liberari facias,* at the valuation of twelve men, to the creditor, as his free tenement.—— The perfons, to whom the lands are thus fold or delivered, their heirs and affigns, fhall hold them, as fully, and for fuch eftate, as the debtor did or might do, before the taking thereof in execution.

In this, I can fee nothing provided for, but the fale of lands for the payment of debts. And, as it is compulfory, the fheriff is made the organ of conveyance, inftead of the owner. His whole proceeding is a legal conveyance, and, like any other legal conveyance, transfers, to the purchafer, all the eftate of him, for whofe debt it was fold. But there is nothing in this act, which fays, that the purchafer from the fheriff is to obtain poffeffion in any other way, than a purchafer from the owner, peaceably or by confent.

It may be faid, that the direction to the fheriff to *feize,* and, in fome cafes, to *deliver,* implies an authority to turn out the poffeffor, and put the purchafer in poffeffion. But let it be remembered, that this feizure, if it mean a turning out of the owner, is when the execution is laid on the land, and before the fale ; and that, even when the fheriff has feized, he is to deliver to the creditor, in the fame manner as lands are delivered on writs of *elegit* in *England*; which feems to be little more, than a fheriff's deed *fub modo,* or an authority to enter ; and, on this delivery, the creditor muft bring an ejectment.

1794.

*1 St. L.* 67.

*Tayler v. Abingdon, Doug.* 456. 4 *Mod.* 48. 1 *Crompt. Pract.* 363.

*P*

1794.

Let us bear in mind, that our act of assembly was about to make a very material change in the principles of common law, and to declare, that lands should be sold for the payment of debts. The assembly knew, that, by the principles then governing real estates, lands could not be sold ; and they knew that leases could be sold ; yet they did not declare, that lands should be sold in the same manner as leases. The assembly knew, that on a *fieri facias* against a tenant of a lease, a sheriff could not turn this tenant out of possession, and put the vendee in ; or, at least, they did not know, that he could ; for no instance of the kind had ever been known to have happened, or if it happened, it had been judicially condemned ; and yet they did not declare, that he should have this power, nor prescribe the manner in which it should be exercised. Can we suppose, that they would not have done so, if they had intended to do it ? It is said, that, by subjecting lands to be sold for debts, they made them chattels. This is a loose way of speaking. It is plain, that they did not make them saleable as chattels ; for they have prescribed a particular manner of proceeding. And though this manner is prescribed at considerable length, and with sufficient minuteness, not a word is said of the sheriff's giving possession. If, independent of giving possession, there was a new object of sufficient importance provided for by this legislative act ; I cannot, from any thing, which they have said, infer a new authority of giving possession : nor do I think myself warranted to supply their silence. Without supposing a new power of giving possession, of which nothing is said, there was a new object, of sufficient importance, provided for by this legislative act, an assignment or conveyance, under certain qualifications, of the right of the whole lands of a debtor. As, before this act of assembly, a creditor had a right to the enjoyment of half the lands of a debtor, until, out of this enjoyment, he should be paid. So, in the manner pointed out by the act of assembly, he could acquire a right to the enjoyment of the whole of his debtor's land forever. But to enter on this enjoyment, and unite possession to his right, no new method is pointed out. What then is a court of law to infer, but that he must pursue that method, for this enlarged remedy, which, before, he could

purfue for an inferior one, and profecuting this, like
any other, right of land, bring an ejectment.

1794.

3. Of the principles of *Englifh* law, I know nothing
fo favourable to the prefent defendants, as the inclination
of juftice *Buller's* opinion, fo much relied on.    But if,
on the principles of *Englifh* law, and on the conftruc-
tion of our acts of affembly, the defendants are not jufti-
fiable, I know not to what principles we fhall refort,
on the ground of general convenience.    On the fubject
of the prefent difcuffion, all the relaxations of common
law feverity have been made by the legiflature.    The
legiflature of this ftate have applied their attention to
this fubject, and, greatly to their honour, extended it
beyond the narrow limits, to which it had been confined.
We find nothing in the folemn act of this extenfion,
which can inform us, that they intended to go farther
than a transference of a right.    Shall we, on a fubject
on which they have expreffed their mind, take upon us
to declare, that they intended to go farther, than their
expreffion bears ?

.That an honeft man, who, for a full price, purchafes,
at public fale, a tract of land, fhould, afterwards, find
himfelf involved in a law-fuit, to obtain the benefit of
his purchafe, is indeed an evil, which requires redrefs.
But the legiflature, with this evil under their contem-
plation, did not redrefs it.    Will it be prefumed, that,
becaufe they did not, we muft ?  As the evil was known
to exift in *Pennfylvania*, unremedied, either by the legif-
lature, or by courts of juftice, it is to be prefumed, that
purchafers at fheriff's fales reckoned upon it in their
bargain, and diminifhed their price, in proportion to the
trouble they expected to meet with, in obtaining pof-
feffion.    Where this is the cafe, the real lofs generally
falls, where it ought to fall, on the obftinate owner, who
continues in poffeffion, after his right has ceafed.  Whe-
ther this has been the cafe, in the prefent inftance, or
not, is no reafon for us to affume an authority, which is
not given to us, and authorize a fheriff to do that, which
law has not authorized him to do.   It is better that an
individual fuffer, than that a general line of duty be
broken through.    It is better, that the evil exift, for
fome little time (I hope it will be but a little time)

P  2

1794. longer, than that its correction should come from an improper fource. Great inconvenience would enfue, if the tenant were turned out at the feizure, under the *fieri facias:* and, to turn him out after the fale, appears to me to want the folemnity of judicial authority. The owner of chattels may feize them at any time: but the law has reftricted the owner of land to a peaceable feizure. Great inconvenience might follow from a loofe unguarded authority of turning out by force, perhaps inftantaneoufly. Some precautions muft be adopted for the due exercife of this power. None have yet been laid down by courts; for the exercife of it was never, that I have heard of, within their contemplation. To fanction it, without previous precaution, appears dangerous. When the legiflature fhall take the fubject into confideration, they can lay down rules for proceeding in it. Until then, we believe, the evil muft be fuffered to exift, or find its remedy in the prudence of the parties. This is not an action of trefpafs, where right would juftify the entry, and the taking and detaining of the poffeffion. It is an indictment for a forcible entry into lands, and expulfion of the tenant, when there was no direct legal warrant for making the expulfion. This is an offence punifhable by indictment. There muft therefore be judgment for the Commonwealth; and reftitution muft be awarded.