This is a point of practice that deserves much consideration, more perhaps than can now be afforded, but as it strikes me, the practice of North Carolina, as stated in Hayw. 280, 346, is extremely doubtful, as to its propriety upon the English authorities. But waiving this for the present, let us consider how the practice ought to stand here; for surely we are not implicitly bound by what we find *Page 57 
in their books.[1] By the English law a certiorari, as a remedial writ, could not ordinarily be granted after trial, unless on points of law; and then not to courts to which a writ of error would lie. Before the formation of our Constitution, it was usual to grant a certiorari, after verdict and judgment below, in civil cases. The practice was well settled in this respect. It appears to have been so settled in North Carolina. In this, the two States agree, but differ from the English law, in issuing thecertiorari, as primary process, after a determination in the court below. The practice of the State of North Carolina in all subsequent steps, after issuing the certiorari, seems not conformable to the English practice. No reason can be seen, why that practice should have been departed from in the progress of the cause, but being a point of practice, the courts of each State will and ought to adopt such a course, as they may conceive applicable to their own peculiar situation. By the practice in England,certioraris were never granted to inferior courts of record, except before trial below. The inquiry then is, how did they conduct the proceedings after issuing the writ. Whether it were necessary to lay a ground, so as to authorize a court or a judge to issue the writ, is not now material to inquire. Our Constitution expressly says that ground must be laid by affidavit. It however seems deducible from the English authorities that it was necessary to lay some ground in all cases, except at the instance of the crown. Upon return of the writ and proceedings of the court *Page 58 
below, in ordinary cases, they were filed immediately; nor upon general principles is it recollected that affidavits on either side have ever been received there. If granted for the purpose of having a trial in the Superior Court the cause proceeded of course; this being the practice in England, is it more reasonable to adhere to it than to adopt the practice we find laid down in Haywood, 280, 366. The practice under the common law seems much more conformable to the spirit of our government. The Constitution, art. 5, sect. 6, provides, that the judges of the superior courts shall have power in all civil cases to issue writs of certiorari to remove any cause, or a transcript thereof, from any inferior court of record into the superior on sufficient cause, supported by oath or affirmation. This clause certainly contemplated some new provision. By the well established practice in England, a civil cause could be removed from an inferior court of record before trial. This clause does not state whether the cause shall be removable before or after trial below; if the clause is construed as merely declaratory of the English practice, the argument is at an end; the certiorari
must be dismissed as having improperly issued; but it is said, and truly, that it was the practice to issue certioraris to remove causes, after determination below, previous to the adoption of the Constitution; and, that that practice has uniformly continued since. As this was the practical law of the State at the time the Constitution was formed, we may well suppose the Constitution is bottomed upon this basis; to wit, that the expression "any cause" includes as well those already tried in the court below as those which were not. But why was the practice of removing causes after trial below established in a court of record, in our government, when it was not the case under the practice of the common law? it results from the difference in our judicial organization. By our law an appeal from an inferior to a superior tribunal, both as to law and fact, is matter of right; not so by the common law: by that law a trial per pais, is unknown in appellate proceedings. Our law supposes, and it is believed with propriety, that the injustice of a decision made by an inferior tribunal cannot be *Page 59 
remedied, so satisfactorily and effectually in any other way as by a review in a superior tribunal, as to fact as well as law. The party wishing to appeal may be prevented by accident over which he may have no control. How is he to be remedied? The practice both of North Carolina and of this State has settled the point bycertiorari: a proceeding unknown to the common law. That law supposed injuries to have arisen in the inferior courts of record, from misconception of matter of law, and not of fact. Hence a writ of error only was allowed, in which matter of law only came into view. From these principles also resulted that other, that after trial in a court to which a writ of error would lie acertiorari would not. Our law supposes that a review of the fact is as necessary to the administration of justice, where justices of the peace preside, as that of the law. If then the party loses the benefit of the ordinary remedy by appeal, without design or fault of his own, he ought to have this writ for the attainment of justice, so that the fact as well as law maybe re-examined agreeably to the genius of our government and laws. A writ of error could not have the same effect. In England, the principal, if not the only, ground for granting a certiorari to an inferior court of record before trial was a well-grounded apprehension that a fair trial could not be had. There, however, if you submitted the determination of the fact to a jury below, you had no remedy in the way of appeal. If in England an apprehension of not being able to get a complete investigation would be sufficient cause to remove by certiorari, surely an actual unfair trial from which the injured party had no opportunity of appealing ought to afford a stronger ground where a review as to facts is allowed.
Hence the practice of granting certioraris after trial below, in this country, is correct and proper: but at the same time it seems equally evident that it ought not to be extended further than the reasons which gave rise to this deviation from the common-law practice would authorize. When, therefore it appears that the complaining party had an opportunity of appealing, and did not avail himself of it, he *Page 60 
ought not to support this writ, otherwise he ought, and proceed in the same manner that he would do upon an appeal, and be subject to no other restrictions. Vide 1 Hayw. 423, § 58. The mode of ascertaining whether he had it in his power to appeal, is by affidavit, as pointed out by the Constitution.
When a court is satisfied by affidavit that a party could not take his ordinary remedy by appeal, which is matter of right, acertiorari should be granted and the cause ought to proceed in the same manner as an appeal, being its substitute. This impression accords with ease and despatch in doing business, and consequently with the convenience of the people.
If affidavits and cross-affidavits were admissible without number, we should be much longer, and, frequently, more laboriously employed in searching out the truth amidst piles of affidavits than we would in trying the cause: under these impressions the affidavit of the plaintiff cannot be read.[1]
[1] 1 Wash. 325, Per Pendleton, C. J. Although uniform decisions which establish the rules of property ought to be adhered to, yet he did not view them sacred in points of practice which may be varied as experience shall evince their convenience or inconvenience.
The same judge observes in 1 Call. 328, uniformity in the decisions of the Court is important; we have, however, progressed but little from the commencement of our existence; and if in any instance we should recently discover a mistake in a former decision, we should surely correct it, and not let the error go forth to our citizens, as a governing rule for their conduct. See 4 Dall. 161 n.
[1] See Add. 193; 2 Hayw. 245.